**MAHER A. A. AZER**, doing business as **KAPIOLANI BUSINESS CENTRE**, Plaintiff–Appellee, v. **THE COURT-HOUSE RACQUETBALL CORPORATION**, a Hawai'i corporation, doing business as **THE INTERNATIONAL FITNESS CENTER, LEROY L. CARVER, JR.**, and **LEROY L. CARVER, III**, Defendants–Appellants

NOS. 15659 and 15729

(CIV. NO. 87–0526)

MARCH 22, 1993

BURNS, C.J., HEEN, AND WATANABE, JJ.

OPINION OF THE COURT BY HEEN, J.

These two appeals by Defendants–Appellants The Court-house Racquetball Corporation (Courthouse), a Hawai'i corporation, doing business as the International Fitness Center, Leroy L. Carver, Jr., and Leroy L. Carver, III, were consolidated for decision by order of this court.[1] We vacate the judgment in Appeal No. 15659 (No. 15659) and dismiss Appeal No. 15729 (No. 15729).[2]

---

[1] Hereinafter, where appropriate, Defendants–Appellants Leroy L. Carver, Jr., and Leroy L. Carver, III, will be collectively referred to as the Carvers, and the Defendants–Appellants will be collectively referred to as Defendants.

[2] The pertinent notice of appeal in Appeal No. 15659 (No. 15659) was filed on October 10, 1991. On October 25, 1991, the lower court entered a judgment (Costs Judgment) in favor of Plaintiff and against Defendants, jointly and severally, for attorney's fees and costs in the amounts of $178,919.86 and $10,713.00, respectively, on account of a counterclaim that is the subject of No. 15659. Defendants appealed the Costs Judgment on November 12, 1991. This is Appeal No. 15729 (No. 15729).

On January 13, 1992, Courthouse filed in the supreme court a "Motion for Summary Reversal" in No. 15729, and asserted that when the Costs Judgment was entered the notice of appeal had already been filed in No. 15659 and the circuit court had no jurisdiction to enter the judgment. At the same time, however, Courthouse argued that the appellate courts had jurisdiction to enter the summary reversal on the grounds that (1) the Rule 54(b) certification in No. 15659, made the Costs Judgment an appealable judgment, and (2) the Costs Judgment was separately appealable as a collateral order. The motion was denied without explanation, and No. 15729 was thereafter briefed and assigned to this court.

The general rule is that where a point was adjudicated on a motion to dismiss an appeal and the motion was denied, the same issue will not be considered by the appellate court again when raised in the briefs. *Schepp v. Hess*, 770 P.2d 34 (Okla. 1989); *Condas v. Sugarhouse Mercantile Co.*, 14 Utah 2d 74, 377 P.2d 498 (1963).

We construe the denial as nothing more than the supreme court's refusal to grant Courthouse's specific request for an unusual remedy not provided for by the rules and in support of which Courthouse cited no precedent. We do not deem the denial of the motion for summary reversal as an adjudication of the jurisdiction of

On February 17, 1987, Plaintiff–Appellee Maher A. A. Azer (Plaintiff) filed a complaint against Courthouse for (1) unpaid lease rents, "applicable state taxes and other additional charges and expenses," on space leased by Courthouse from Plaintiff in a building (the Building) owned by Plaintiff on Kapiolani Boulevard; and (2) unpaid assessments for the use of additional parking spaces in the Building's parking facility. On March 30, 1987, Courthouse answered the complaint and filed a counterclaim.

On May 27, 1987, Courthouse filed a First Amended Counterclaim (Counterclaim) alleging, in Counts V, VI, and VII, that it had suffered damages on account of Plaintiff's failure to maintain and repair the Building's parking facility. In particular, paragraph 28 (Paragraph 28) of the Counterclaim, alleged that because of Plaintiff's failure to maintain and repair the Building's parking facility, Courthouse lost old and new customers and suffered a loss of

---

either the lower court to enter the Costs Judgment or this court's jurisdiction to determine No. 15729. This is particularly so in light of the fact that the order denying the motion for summary reversal was entered without affording Azer an opportunity to respond. Consequently, we are not foreclosed from determining the question of appellate jurisdiction.

An appellate court is required in every case brought before it to determine if it has jurisdiction to decide the appeal, *State v. Kam*, 69 Haw. 483, 748 P.2d 372 (1988), and if a jurisdictional defect appears in the record, the appellate court must, *sua sponte*, dismiss the appeal. *Familian Northwest, Inc. v. Central Pacific Boiler & Piping, Ltd.*, 68 Haw. 368, 714 P.2d 936 (1986).

When the notice of appeal was filed in No. 15659 on October 7, 1991, the lower court lost jurisdiction to render the Costs Judgment. *SGM Partners v. The Profit Co.*, 8 Haw. App. 86, 793 P.2d 1189, *aff'd in part, rev'd in part*, 71 Haw. 506, 795 P.2d 853 (1990). Consequently, we hold, *sua sponte*, that, since the lower court did not have jurisdiction to enter the Costs Judgment, this court is without jurisdiction to consider the appeal from that order. *Korean Buddhist Dae Won Sa Temple of Hawai'i, Inc. v. Zoning Board of Appeals*, 9 Haw. App. 298, 837 P.2d 311 (1992).

income in the amount of $4,000 per day.[3] The Counterclaim prayed for damages for Plaintiff's breach.

On November 21, 1988, Plaintiff moved to join the Carvers as defendants claiming the Carvers were personally liable because (1) after Courthouse was dissolved on November 15, 1985, for failure to file an annual corporate exhibit, the Carvers, as officers, directors, and stockholders of Courthouse, continued to operate Courthouse's business; and (2) the Carvers had personally guaranteed Courthouse's performance of the lease terms. Joinder was granted on March 21, 1989, and trial was set for the week of July 31, 1989.[4]

In the course of preparing for trial, Plaintiff undertook several steps to discover from Courthouse what evidence Courthouse had to support the damages alleged in Paragraph 28. The following discovery steps are pertinent to this appeal:

(1) October 8, 1987: Plaintiff's First Request for Answers to Interrogatories (First Interrogatory Request).

Interrogatories 10 through 14 (Interrogatories 10–14) requested information relating to the Counterclaim, including the names, addresses, and telephone numbers of the customers that Courthouse allegedly lost, the dates on which such customers were lost, the facts concerning each loss, the

---

[3] For a discussion of the parking problems experienced by tenants of the Building, *see SGM Partners, supra.*

[4] On November 18, 1988, Maher and Milagros Azer filed an action on the same lease involved in this case in the District Court of the First Circuit against the Carvers for summary possession, unpaid lease rents, and other claims. The case was transferred to the First Circuit Court and designated Civ. No. 89–0058–01 when the defendants demanded a jury trial. On May 5, 1989, the circuit court denied Defendants' motion to consolidate Civ. No. 89–0058–01 with this case.

amount of lost income attributed to each such customer, and the facts supporting the allegation of a daily loss of $4,000 income.

(2) February 3, 1989: Plaintiff's Third Request for Production of Documents (Third Document Request).

Plaintiff sought documents related to Courthouse's income and expenses, cash receipts and disbursements, profits and losses, and assets and liabilities.

(3) June 9, 1989: Plaintiff's Motion to Compel Answers to the First Interrogatory Request and/or for Preclusion of Evidence (Motion to Preclude).

Plaintiff sought to compel answers to Interrogatories 10–14 or to preclude Courthouse from producing evidence at trial regarding the Counterclaim.

(4) June 22, 1989: Plaintiff's motion to compel the production of the documents sought in the Third Document Request (Motion to Compel).

On June 23, 1989, Plaintiff's counsel filed a supplemental affidavit in support of the Motion to Preclude in which he outlined the history of Courthouse's alleged discovery abuses.[5] In a memorandum filed on June 22, 1989, opposing the Motion to Preclude, Courthouse promised to submit supplemental responses

---

[5] The affidavit pointed out that in addition to the Motion to Preclude and the Motion to Compel, Plaintiff was forced to take the following actions to compel Courthouse's compliance with discovery requests:

(1) November 3, 1988: Motion to compel the production of documents sought in Plaintiff's First Request for Production of Documents. The motion was granted on February 23, 1989;

to Interrogatories 10–14 by June 30, 1989, the discovery cut–off date. On that date, Defendants produced four "bankers boxes" filled with documents in response to the first and third requests for documents.

The Motion to Preclude and the Motion to Compel were considered by the court without a hearing[6] and on July 10, 1989, the motions judge issued a Minute Order (Minute Order) which stated in relevant part:

> 1. Defendants have failed to answer interrogatories 10–14 dealing with para. 28 in their 1st Am Counterclaim. Since the Defendants promised responses by 6/30/89, the Court will disallow any evidence by Defendants to support para. 28.

---

(2) February 17, 1989: Motion to compel answers in response to Plaintiff's Second Request for Answers to Interrogatories. The motion was granted on April 10, 1989.

The affidavit further recounted that in response to Plaintiff's Third Request for Production of Documents filed on February 3, 1989, Courthouse produced only its general excise tax returns. Additionally, the affidavit stated that in a June 21, 1989 deposition of Edie Hood (Hood), who was Courthouse's office manager/bookkeeper, Hood testified that she prepared monthly income and expense reports and other financial records and periodically sent copies of those records to Leroy Carver, III. Hood further testified that Defendants' representative and their attorney placed copies of those and other financial records in storage in Honolulu and that after Courthouse closed its business, she sent copies of all financial and other relevant records to Leroy Carver, III, in California. When Hood was asked for the address of the storage facility where the records were located, she was instructed by Defendants' counsel not to answer under a claim of confidentiality.

[6] On May 11, 1983, the then civil administrative judge of the first circuit court entered an order which provided that thereafter certain enumerated motions would be accorded "oral hearings." All other motions would be decided on the basis of memoranda and affidavits without oral hearings. Discovery motions are not among those specifically enumerated in the order. Thus, discovery motions are decided without oral hearings in the first circuit court.

2. Defendants ordered per Plaintiffs' 3rd Production Request to produce the records therein within 20 days from the date of this minute order.

3. Reasonable expenses to Plaintiff.

On July 18, 1989, Defendants filed a Motion for Reconsideration (First Motion for Reconsideration) of the Minute Order.

On August 11, 1989, the motions judge entered a formal order (Preclusion Order) granting the Motion to Preclude and the Motion to Compel and denying the First Motion for Reconsideration. The Preclusion Order read in pertinent part as follows:

4. Defendants shall be and are hereby precluded from presenting any evidence at trial in support of the allegations of Counts V, VI, and VII of the Counterclaim as amended, that as a result of Plaintiff's failure to maintain and/or repair the premises, parking deck and/or common areas, . . . "Defendant/Counterclaimant has been damaged in that it has lost both new and old customers in an amount to be proven at trial, but which exceeds $4,000 per day," as alleged in paragraph 28 of the Amended Counterclaim, or in any way relating to the alleged loss of contract sales described in the Report of Expert Testimony of Teresa McAllister, C.P.A., and Jim Bock, C.P.A., filed herein on July 19, 1989.

After a bench trial that lasted from August 7 to 16, 1989, and in which no evidence was allowed by the court with respect to the allegations in Paragraph 28, the trial court entered findings of fact (FOF) and conclusions of law (COL). In FOF No. 12, the trial court found that, pursuant to the Preclusion Order, Courthouse was prevented from introducing *prima facie* evidence in support of the Counterclaim. Judgment was entered on

December 22, 1989, in favor of Plaintiff against Courthouse only,[7] and the Counterclaim was dismissed with prejudice.

This is Defendants' fourth attempt to appeal from the judgment, and was lodged after an August 1, 1991 motion by the Carvers to dismiss the complaint as to them or in the alternative for summary judgment was denied in an order entered by the lower court on October 7, 1991.[8] In the same order, the court entered a

---

[7] In Conclusion of Law "Q," the trial court held it had no jurisdiction over the Carvers, who are not Hawai'i residents and were not served. Therefore, no judgment was entered against them.

The judgment awarded Plaintiff "the unpaid principal sum of $10,135.64[,]" together with prejudgment interest.

[8] Defendants' first appeal was lodged on October 25, 1989, after the findings of fact and conclusions of law were entered. This appeal was dismissed as not being from a final judgment. The second appeal was from the December 22, 1989 judgment against Courthouse only. However, the supreme court dismissed that appeal on grounds that although the Carvers had not been personally served, they had submitted to the jurisdiction of the court by filing an affidavit in the case. Therefore, there was no final judgment.

The judgment against Courthouse was paid, and on July 23, 1990, the Carvers filed a motion for summary judgment in their favor on the ground that the satisfaction of the judgment relieved them of any further liability either as guarantors, alter egos, or trustees in the dissolution of Courthouse. In the alternative, the motion sought Rule 54(b), Hawai'i Rules of Civil Procedure certification. In an order filed on November 5, 1990, the court denied, *inter alia*, the Carvers' motion for summary judgment.

Also on July 23, 1990, Defendants filed another motion for reconsideration of the Preclusion Order (Second Motion for Reconsideration), which was denied on November 14, 1990. In the Second Motion for Reconsideration, Defendants made the same argument they make on appeal, to wit, the Preclusion Order is contrary to the principles set forth in *W. H. Shipman, Ltd. v. Hawaiian Holiday Macadamia Nut Co.*, 8 Haw. App. 354, 802 P.2d 1203 (1990).

Defendants filed a third notice of appeal on December 3, 1990. This appeal was also dismissed on the ground that the November 5, 1990 order denying the Carvers' motion for summary judgment was not a final judgment.

Rule 54(b) certification, which had also been requested by Defendants. This is No. 15659.

## No. 15659

Defendants assert that (1) the motions judge erred in issuing the Preclusion Order; (2) the trial judge erred in dismissing the Counterclaim; and (3) the motions judge erred in denying Defendants' July 23, 1990 motion for reconsideration (Second Motion for Reconsideration) of the Preclusion Order.[9,10]

The dispositive issue is whether the motions judge abused his discretion when he issued the Preclusion Order. A thorough review of the record indicates he did. It follows that the ensuing dismissal of the Counterclaim was error and the motions judge abused his discretion in denying Defendants' Second Motion for Reconsideration.

A trial court's imposition of a discovery abuse sanction is reviewable on appeal for abuse of discretion. *Kukui Nuts of Hawai'i, Inc. v. R. Baird & Co., Inc.*, 6 Haw. App. 431, 726 P.2d 268 (1986) (hereinafter *Kukui I*). A trial court abuses its discretion whenever it exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party. *SGM Partners v. The Profit Co.*, 8 Haw. App. 86, 793 P.2d 1189, *aff'd in part, rev'd in part*, 71 Haw. 506, 795 P.2d 853 (1990).

---

[9] *See* note 8, *supra*.

[10] In the notice of appeal, Defendants indicated that they were appealing from an August 11, 1991 order denying their motion to dismiss the complaint as to the Carvers. However, there is no mention of the order in the opening brief's sections on points or questions on appeal. Additionally, the opening brief makes no argument on the issue. Consequently, Defendants are deemed to have waived the issue. *State v. McCully*, 64 Haw. 407, 642 P.2d 933, *cert. denied*, 459 U.S. 830, 103 S. Ct. 68, 74 L. Ed. 2d 68 (1982); Rule 28(b)(4), Hawai'i Rules of Appellate Procedure (1987).

Moreover, dismissal of a pending action by the trial court with prejudice is not favored, *Richardson v. Lane*, 6 Haw. App. 614, 736 P.2d 63 (1987), and a full trial on the merits is favored, *GLA, Inc. v. Spengler*, 1 Haw. App. 647, 623 P.2d 1283 (1981). An appellate court will uphold a dismissal with prejudice only where the record clearly shows delay or contumacious conduct and where lesser sanctions would not serve the best interest of justice. *Richardson.*

Defendants argue that the Preclusion Order is contrary to the principles established by this court in *W. H. Shipman, Ltd. v. Hawaiian Holiday Macadamia Nut Co.*, 8 Haw. App. 354, 802 P.2d 1203 (1990). However, *Shipman* is distinguishable on its facts and, therefore, is inapplicable.[11]

The essence of Plaintiff's argument is that the Preclusion Order was properly entered in accordance with the provisions of Rule 37, Hawai'i Rules of Civil Procedure (HRCP) (1980). Our close examination of the record indicates that the Preclusion Order was not authorized by Rule 37.

Rule 37, HRCP, reads in pertinent part as follows:

**Rule 37. FAILURE TO MAKE DISCOVERY: SANCTIONS.**

**(a) Motion for Order Compelling Discovery.**

\* \* \*

---

[11] In *Shipman, supra,* the lower court, after finding that the defendant had violated the discovery rules of the Hawai'i Rules of Civil Procedure, entered an order specifically precluding the defendant from "'asserting, or offering any evidence of, any matters' covered by the [interrogatories served by the plaintiff] in defense of any of Shipman's claims." 8 Haw. App. at 361, 802 P.2d at 1207. In this case, as discussed in the opinion, although Defendants' conduct was not in keeping with a party's duty to give complete discovery of all relevant information in his possession. Defendants did not actually violate the discovery rules. *See Wakabayashi v. Hertz Corp.*, 66 Haw. 265, 660 P.2d 1309 (1983).

(2) *Motion.* If . . . a party fails to answer an interrogatory submitted under Rule 33, . . . the discovering party may move for an order compelling an answer[.]

(3) *Evasive or Incomplete Answer. For purposes of this subdivision* an evasive or incomplete answer is to be treated as a failure to answer.

\* \* \*

**(b) Failure to Comply With Order.**

\* \* \*

(2) *Sanctions by Court in Which Action is Pending.* If a party . . . *fails to obey an order to provide or permit discovery,* . . . the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

\* \* \*

(B) *An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence*[.]

\* \* \*

In lieu of any of the foregoing orders or in addition thereto, the court shall require *the party failing to obey the order* or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

\* \* \*

**(d) Failure of Party to Attend at Own Deposition or Serve Answers to Interrogatories or Respond to Request for Inspection.** If a party or an officer, director, or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party *fails*

... (2) *to serve answers or objections to interrogatories* submitted under Rule 33, after proper service of the interrogatories, ... the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under paragraphs (A), (B), and (C) of subdivision (b)(2) of this rule. In lieu of any order or in addition thereto, the court shall require the party failing to act or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

The failure to act described in this subdivision may not be excused on the ground that the discovery sought is objectionable unless the party failing to act has applied for a protective order as provided by Rule 26(c).

(Emphasis added.)

Generally, Rule 37(b) sanctions are only warranted where a court order for discovery has been violated. However, sanctions are allowed under Rule 37(d) "against a party for a *complete* failure to respond to ... interrogatories[.]" 8 C. WRIGHT AND A. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2282, at 757 (1970).

[I]f any single interrogatory is not answered, or in lieu of an answer an objection is not made, there is an infraction of the rule and sanctions may be imposed under Rule 37(d) without first ordering the party to answer. If an answer is filed to a particular interrogatory, on the other hand, but the party serving it deems it to be "incomplete," he must move to compel a satisfactory answer and may not move for the imposition of sanctions. Clearly evasive or incomplete answers justify an order under Rule 37(a). Further, once an order is made requiring answers, evasive

or incomplete answers may be treated as a failure to comply, and sanctions imposed under Rule 37(b) without the necessity of making a second order.

4A J. MOORE AND J. LUCAS, MOORE'S FEDERAL PRACTICE (MOORE'S) ¶ 37.02[5], at 37–44–45 (2d ed. 1992).

Rule 37(d) makes it explicit that a party properly served has an absolute duty to respond, that is, to . . . serve answers or objections to interrogatories served upon him, . . . and that the court in which the action is pending may enforce this duty by imposing sanctions for its violation. Rule 37(d) deals, then, with failure to make the initial response required by the Rules, while subdivisions (a) and (b) provide a method of resolving differences between the parties and enforcing the court's determinations. Thus, there must be an order under subdivision (a) before sanctions are imposed under (b), while under (d) the party aggrieved moves directly for the imposition of sanctions. . . . In short, if the party from whom discovery is sought complies with the rule in question by making the initial response, he has a right to refuse discovery until compelled by court order, subject to the expenses of determining the justification of his refusal; but if he does not comply with the rule, he is subject to the sanctions set forth in Rule 37(d).

MOORE'S ¶ 37.05, at 37–120–21.

Our review of the Preclusion Order was hampered by the fact that the motions judge did not make FOF and COL.[12] However, in the Minute Order the motions judge did note that Defendants failed

---

[12] We also question whether, when the trial court proposes to impose a discovery sanction of such severe consequences as the sanction imposed here, the issue should be resolved without a hearing.

to answer Interrogatories 10 through 14. A close review of the record indicates the "finding" was erroneous. Appellants did in fact answer the questions within the meaning of Rule 37(d).

In its response to Interrogatories 10–14 filed on February 17, 1988, Courthouse generally objected to Interrogatories No. 10, 11, and 13 on the grounds that the information was protected from discovery by the counsel work product privilege, and that the interrogatories were burdensome and oppressive, vague, and compound. Courthouse also indicated that its own discovery was continuing and that it would supply further answers upon completion of discovery. In response to Interrogatory No. 12, Courthouse did supply the name of one customer it allegedly lost on account of the parking difficulties and indicated generally the evidence it intended to rely on to support its counterclaim.

Interrogatory No. 14 and Courthouse's answer read as follows:

### Interrogatory No. 14

With respect to the allegation contained in paragraph 28 of Defendant's First Amended Counterclaim that Defendant's damages exceed $4,000 per day, please state each and every fact, contention, document and other source upon which Defendant relies to support its claim that damages exceed $4,000 per day.

### Response to Interrogatory No. 14

Objection, the question seeks to invade defendant and counterclaimant's counsel's work product privilege in that it calls for an analysis of written data, and in so far as the question invades that privilege, defendant and cross–complainant objects. Without waiving said objections, defendant and crosscomplainant answers as follows:

Parking complaint sheets;

Drops in gross monthly income subsequent to the 1984 start of parking problems;

Accounting records showing income trends before, during and after the repair of the parking area.

Discovery is continuing.

Thus, Courthouse did respond to Interrogatories 10–14, and the Preclusion Order was not authorized under Rule 37(d).

Plaintiff's argument that Defendants' responses were "evasive, misleading or false" and may be treated as "a failure to answer" in accordance with Rule 37(a)(3), thus justifying Rule 37(d) sanctions, is without merit.

Evasive or incomplete answers to interrogatories are treated under Rule 37(a)(3) as failures to answer only with respect to Rule 37(a). MOORE'S ¶ 37.01[8], at 37–22. Thus, Defendants' answers might have been used by Plaintiff to support a motion to compel in accordance with Rule 37(a)(2). However, the evasive or incomplete answers could not be used to support sanctions pursuant to Rule 37(d). *See* MOORE'S ¶ 37.02[5], at 37–44–45.

Citing ***Doe v. Roe***, 3 Haw. App. 15, 639 P.2d 1121 (1982), Plaintiff also claims that the Preclusion Order was authorized under Rule 37(d) because Defendants failed to observe their agreement to supplement their responses. We disagree.

First, *Doe* is factually distinguishable. In *Doe*, the petitioner failed to meet its agreement to provide the respondent with copies of certain letters. However, the trial court's refusal to allow the petitioner to introduce the letters at trial was based not only on the petitioner's breach of the agreement but also on the fact that the petitioner had refused the respondent's request to examine the letters immediately prior to trial.

Second, Defendants did not completely fail to honor their agreement to supplement their answers. Defendants (1) answered each interrogatory, (2) promised to supplement their responses,

and (3) did supplement their responses, albeit tardily and, perhaps, incompletely.[13]

Plaintiff's further contention that the Preclusion Order was appropriate under Rule 37 for Defendants' violation of their agreement to supplement their answers in accordance with Rule 26(e) is without merit.[14] First, Rule 37 is not the source of the court's authority to impose sanctions for a party's Rule 26(e) violation. 8 C. WRIGHT and A. MILLER, FEDERAL PRACTICE AND PROCEDURE:

---

[13] On July 5, 1989, five days after the discovery cut–off date, Defendants filed an affidavit opposing the Motion to Preclude in which they provided supplemental answers to the First Interrogatory Request. The supplemental answers referred Plaintiff to financial information contained in the four "bankers boxes" full of documents furnished to Plaintiff on June 30, 1989. The affidavit also gave Defendants' reasons for not having provided the information earlier.

The affidavit stated that after Courthouse ceased doing business, (1) its financial records were placed in storage in over 40 bankers boxes; (2) six file folders of business records were forwarded to the Carvers on the mainland, which were immediately sent to Carvers' counsel to sort out privileged information; (3) Carvers' counsel refrained from sending these documents to counsel, since they were incomplete, and from supplementing the answers to interrogatories until a complete set could be obtained.

[14] Rule 26(e), Hawai'i Rules of Civil Procedure (1990) reads as follows:

**Supplementation of Responses.** A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement his response to include information thereafter acquired, except as follows:

(1) A party is under a duty seasonably to supplement his response with respect to any question directly addressed to (A) the identity and location of persons having knowledge of discoverable matters, and (B) the identity of each person expected to be called as an expert witness at trial, the subject matter on which he is expected to testify, and the substance of his testimony.

(2) A party is under a duty seasonably to amend a prior response if he obtains information upon the basis of which (A) he knows that the response was incorrect when made, or (B) he knows that the response though correct

CIVIL § 2050, at 325 (1970). Second, as we have noted, Defendants did not fail to meet their agreement. Finally, Rule 26(e) requires a party to supplement responses only in certain circumstances, none of which are present here.

Plaintiff also argues that the Preclusion Order was based on the lower court's February 23, 1989 order (February 23 Order) to Defendants to produce documents they had withheld from discovery under Plaintiff's first request for production of documents.[15] Plaintiff claims that the Motion to Compel put the February 23 Order before the court and the Minute Order referred to it. The record does not support the argument.

First, the Motion to Compel does not allege that Defendants had violated any prior court order. Second, the Preclusion Order does not state that it was based on Defendants' failure to comply with any prior order. The Minute Order, on which the Preclusion Order was based, referred to Plaintiff's third request for production of documents, for which the record shows there was no prior order. Neither the Minute Order nor the Preclusion Order referred to the February 23 Order. Therefore, it does not appear that the February 23 Order was a basis for the Preclusion Order.

Plaintiff also argues that through the parties' memoranda and affidavits filed with respect to the First Motion for Reconsideration, the court was fully informed of all of Defendants' alleged

---

when made is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment.

(3) A duty to supplement responses may be imposed by order of the court, agreement of the parties, or at any time prior to trial through new requests for supplementation of prior responses.

[15] The record shows that after Plaintiff's first request for production of documents was served, discovery was held in abeyance pending settlement negotiations. After settlement negotiations failed, Plaintiff filed the first motion to compel production of the documents, which resulted in the February 23, 1989 order.

discovery abuses before it formally entered the Preclusion Order.[16] Those "factual" accounts according to Plaintiff provide further justification for the Preclusion Order and "mandates affirmance of the judgment below." We disagree.

The Motion to Preclude was based on Defendants' failure to answer interrogatories. Although the record indicates that the court did consider the Motion to Compel at the same time that it considered the Motion to Preclude, and both motions were granted in the Minute Order[17] there is nothing in the Minute Order to indicate that the sanction relating to Counts V, VI, and VII was based on anything other than the allegations of the Motion to Preclude.

---

[16] The parties filed lengthy memoranda and affidavits of counsel in support of and opposing the First Motion for Reconsideration. The memoranda and affidavits contained lengthy accounts of the actions of both parties during the discovery stage of the proceedings. In his memorandum, Plaintiff asserted that Courthouse's response to the February 23, 1989 order was evasive and incomplete, because although Courthouse produced various letters and memoranda,

> *none of the 4 boxes of financial records upon which Defendants now rely to support their damage claims were produced at that time.* THE COURTHOUSE was apparently relying upon the cryptic response, "Defendant will supply further documents which are applicable to this request upon completion of discovery," to justify withholding documents which were in its possession and in the possession of third parties over whom THE COURTHOUSE had direct control, even though the Order of February 23, 1989, required production *forthwith.*

(Emphasis in original.) The Preclusion Order may arguably have been partly based on Courthouse's actions. The court could have reasoned that the incomplete production constituted a failure to comply with a discovery order within the meaning of Rule 37(b). However, we are not convinced that the motions judge in fact took Plaintiff's argument into account or that Courthouse's actions constituted a "failure to comply" within the meaning of the rule, since Courthouse did provide some of the documents, promised further production, and then, prior to the entry of the Preclusion Order, produced more documents in response to the Third Document Request.

[17] In the Preclusion Order, the court also denied the First Motion for Reconsideration.

Moreover, it does not appear that the Preclusion Order was anything more than a formalization of the determinations expressed in the Minute Order, which obviously was not based on the representations that followed upon the filing of the motion for reconsideration. Since the motions judge did not state any reasons for the Preclusion Order that were not mentioned in the Minute Order, we assume that the motions judge did not intend to go beyond the considerations that went into the Minute Order.

Finally, we note, as Plaintiff implicitly argues, that in addition to its authority under Rule 37, HRCP, the court may sanction parties for abusive litigation practices in a proceeding before it in accordance with Hawai'i Revised Statutes § 603–21.9(1) and (6) (1985), and its inherent powers.[18] *Kukui Nuts of Hawai'i, Inc. v. R. Baird & Co., Inc.*, 7 Haw. App. 598, 789 P.2d 501 (1990) (*Kukui Nuts II*). In *Kukui I*, we held that the power of the court under either authority "must be exercised with restraint and discretion" and the exercise is subject to review for abuse of discretion. *Id.* 6 Haw. App. at 436–37, 726 P.2d 272.

In the absence, in this case, of a full hearing to establish the factual bases for the Preclusion Order, we are not convinced that the record so clearly shows (1) delay or contumacious conduct and (2) lesser sanctions would not serve the best interests of justice so as to justify denying Defendants the opportunity to prove the

---

[18] Hawai'i Revised Statutes § 603–21.9(1) and (6) (1985) reads as follows:

**Powers.** The several circuit courts shall have power:

(1) To make and issue all orders and writs necessary or appropriate in aid of their original or appellate jurisdiction;

\* \* \*

(6) To make and award such judgments, decrees, orders, and mandates, issue such executions and other processes, and do such other acts and take such other steps as may be necessary to carry into full effect the powers which are or shall be given to them by law or for the promotion of justice in matters pending before them.

Counterclaim. Consequently, we cannot uphold the Preclusion Order as a proper exercise of judicial discretion.

## CONCLUSION

In accordance with the foregoing discussion, the judgment entered in No. 15659 is vacated and this matter is remanded for a new trial. No. 15729 is dismissed.[19]

*William C. McCorriston, William Meheula, Mark J. Bennett* and *Thomas E. Bush* (McCorriston Miho & Miller, of counsel) on the briefs for defendants–appellants.

*Wesley H. Sakai, Jr., Scott I. Batterman* (Bendet, Fidell, Sakai & Lee, of counsel), and *Susan Oki Mollway* (Cades, Schutte, Fleming & Wright, of counsel) on the brief for plaintiff–appellee.

---

[19] *See* note 2, *supra.*