107 F.3d 510
 37 Fed.R.Serv.3d 177
 Melissa M. Moore LANGLEY, deceased, by her personal
representative, Ronald G. LANGLEY, Jr.; Nathan R.
Patterson, deceased, by his personal representative, Ronald
G. Langley, Jr.; and Lisa L. Langley Bergman, deceased, by
her personal representative, Ronald G. Langley, Jr.,
Plaintiffs-Appellants,
v.
UNION ELECTRIC COMPANY, Defendant-Appellee.
 No. 96-1908.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 6, 1997.
Decided Feb. 20, 1997.
 
 Lee W. Barron (argued), Gail Renshaw, Wood River, IL, for Plaintiffs-Appellants.
 Mary S. Juen, Karl D. Dexheimer (argued), Thompson Coburn, Belleville, IL, for Defendant-Appellee.
 Before FLAUM, EASTERBROOK, and ROVNER, Circuit Judges.
 FLAUM, Circuit Judge.
 
 
 1
 Plaintiff Ronald G. Langley, as the personal representative of three decedents, sued the Union Electric Company on the theory that an unventilated furnace, negligently provided with gas by Union Electric, killed the Langley-Patterson family. Langley never produced the furnace. As a sanction for this failure of production, the district court disallowed all evidence pertaining to the existence or use of the furnace. With no evidence before it to show negligence, the district court granted summary judgment for Union Electric. Langley now appeals the imposition of the sanction, and implicitly, the grant of summary judgment. We affirm.
 
 I.
 
 2
 In January 1991, Melissa Langley, her two children, Nathan R. Patterson and Lisa L. Bergman, and Nathan L. Patterson, father of Nathan R., were poisoned to death by lethal carbon monoxide fumes presumably caused by an unventilated furnace. Police, soon thereafter, took pictures of the furnace. In December 1992, Ronald Langley, as representative of the mother and two children, filed a wrongful death suit in state court against the Union Electric Company, the supplier of the gas. Imogene Patterson, representative of Nathan L., filed a similar suit. The theory of their cases was that Union Electric acted negligently by providing gas service to the victims' home when the company had reason to know that the home contained improper or nonexistent gas fixtures.[1] Union Electric removed the cases to federal court, where jurisdiction was premised upon diversity, and moved for the cases to be consolidated, to which there was no objection.
 
 
 3
 Shortly after the suits were filed, a representative of Union Electric visited the site of the home, which had been razed by the landlord; he assumed all evidence in the home had been destroyed. In May 1993, however, James Patterson testified that he had removed the furnace from the home two or three weeks after the accident and stored the furnace in the garage of a friend, Greg Becker. Defense counsel orally notified plaintiffs' counsel of his need to inspect the furnace, and confirmed this request in writing on June 14, 1993. After several more oral inquiries, November 24, 1993 was agreed upon as the date to inspect the furnace. On November 23, 1993, one of plaintiffs' attorneys informed defense counsel that unspecified problems had arisen and the inspection would be impossible. On December 6, defense counsel sent another letter requesting an inspection. At this time, plaintiffs did not explain the unavailability of the furnace. On January 11, 1994, Union Electric moved for Rule 37 sanctions and requested that the court compel the production of the furnace. Plaintiffs responded that they were incapable of producing the furnace. They later filed an affidavit of James Patterson, which explained that the furnace had been lost in the flood of 1993, some seven months earlier, as Greg Becker's house was on a flood plain. In response, raising more questions about the furnace (or furnaces), defense counsel filed an affidavit of Kenny Harrison, stating that the furnace purportedly moved into the Langley-Patterson home in November 1990, preinspection, was not the one in the police photographs, and an affidavit of Brenda Patterson, wife of James, stating that she had seen the furnace after the flood.[2]
 
 
 4
 On August 22, 1994, Judge Stiehl entered an order requiring the plaintiffs to produce the furnace in 21 days or, in the alternative, barring the introduction of any evidence regarding the furnace. Plaintiffs filed a motion to reconsider. Another round of affidavits ensued: Greg Becker claimed that FEMA removed the furnace; a representative of FEMA stated that the agency participated in no debris removal. In March 1995, the court denied the motion to reconsider. Plaintiffs responded that they were unable to produce the furnace. Accordingly, the court barred all evidence concerning the furnace. In July 1995, defendants sought summary judgment. In March 1996, with no evidence to show negligence, the court granted summary judgment.
 
 II.
 
 5
 Our case law is adamant that an appellant faces an uphill battle in seeking to reverse an award of sanctions by the district court. See Marrocco v. General Motors Corp., 966 F.2d 220, 223 (7th Cir.1992) ("We cannot understate the difficulty of the task litigants face when challenging a district court's choice of sanctions."). Discovery sanctions under Rule 37 will be affirmed unless the district court has abused its discretion. National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976); Patterson v. Coca-Cola Bottling Co. Cairo-Sikeston, Inc., 852 F.2d 280, 283 (7th Cir.1988). In order for us to reverse, it must be clear that "no reasonable person could concur in the trial court's assessment of the issue under consideration." Id. (internal citation omitted).
 
 
 6
 Appellant complains that there was neither a court order to compel production pursuant to Rule 37(a) nor a Rule 34 request prior to the imposition of sanctions. Appellant fails either to grasp the plain meaning of Rule 37 or to appreciate what transpired in this litigation. A Rule 34 request consists of a party serving notice that it wishes to inspect an item. Fed.R.Civ.P. 34(b).[3] This request should be accompanied by a suggestion of a time and place for inspection. Counsel for Union Electric requested in writing that he be able to view the furnace, and, in deference to appellant's counsel, inquired when would be a convenient place and time for the inspection. Langley's counsel replied orally that the furnace could be viewed November 24, 1993. When Langley's counsel did not produce the furnace, he failed to honor this commitment. Such a lapse can trigger a request for sanctions under Rule 37(a). Defense counsel moved for such sanctions January 11, 1994. At this point, the judge allowed for copious filings. On August 22, 1994, the judge ordered the furnace to be produced within 21 days, under threat of sanctions. Pursuant to a motion to reconsider, more affidavits and arguments accumulated. Having reentered his order and waited in vain for the furnace, the judge imposed sanctions in March 1995. Because appellant was in violation of the order to produce the furnace, the sanctioning was a perfectly legitimate exercise of power under Rule 37(b).[4]
 
 
 7
 Appellant next argues that he is not at fault for the loss of the furnace, and thus should not be sanctioned. Rule 37 sanctions may only be imposed where a party displays "wilfulness, bad faith, or fault." Philips Medical Systems Int'l, B.V. v. Bruetman, 982 F.2d 211, 214 (7th Cir.1992). In Marrocco, we explained that the term "fault," as we employed it, was unconcerned with the non-complying party's subjective motivation, but rather "only describe[d] the reasonableness of the conduct--or lack thereof--which eventually culminated in the violation." Marrocco, 966 F.2d at 224. We construed the sanctioned party's poor judgment in the way it packaged and handled evidence and its inexcusable delay in not investigating the loss of evidence as "fault." Id. We are presented with an analogous situation here: appellant demonstrated poor judgment in where and with whom he stored the furnace and a degree of indolence, as well as a lack of candor, in failing to report the loss of the furnace. Langley is at "fault" for the loss of the furnace.
 
 
 8
 Appellant complains that he was not in control of the furnace, and therefore not at fault for its loss. James Patterson, brother of Nathan L., was the remover of the furnace. Appellant reasons that James acted as a representative of only the Patterson plaintiff, and thus the disposition of the furnace was not within the control of the Langley plaintiff. Langley's actions belie this notion. From the initiation of the suit, appellant has been obliged to preserve evidence in this negligence action. Langley relied upon James Patterson and Greg Becker to remove and store the furnace. When the cases were consolidated, no objection was made that appellant and the Patterson plaintiff could not act in concert. When requests for inspection were served upon plaintiffs' counsel, no response indicating that the Langley plaintiff could not produce the furnace was made. Distancing himself at this point from his coplaintiff places appellant no less at fault for the loss of the furnace.[5]
 
 
 9
 Next Langley argues that the sanction is a disproportionate response to his conduct. "An award of sanctions must be proportionate to the circumstances surrounding the failure to comply with discovery." Crown Life Ins. Co. v. Craig, 995 F.2d 1376, 1382 (7th Cir.1993); see also Newman v. Metropolitan Pier & Exposition Authority, 962 F.2d 589, 591 (7th Cir.1992). The district court prohibited appellant from introducing evidence "regarding the furnace, including, without limitation, all matters related to installation, condition, origin, and use of the furnace." Langley's approach cuts both ways: on the one hand, he argues that evidence about the furnace was crucial to his case, so that prohibiting evidence of the furnace was a drastic measure; on the other hand, he claims the furnace itself was not that important to the case, especially in light of the police photographs, so that the court was wrong to react so strongly to the loss of the furnace. Union Electric responds that loss of the actual furnace greatly prejudiced its defense, particularly because there is some doubt that the photographs are of the furnace purportedly installed at the time of the gas inspection.
 
 
 10
 The sanction imposed here is sweeping. Conceivably, the sanction could have been drawn more narrowly: for example, the court could have excluded only evidence that could have been gotten at through a full inspection of the furnace. Langley, however, never introduced into the record what could be proved by the existence of the furnace. An affidavit of a materials expert explaining in a reliable and technical way what could be gleaned from the furnace could have been useful to the court. As it stands, nothing in the record helps the district court or us understand what this evidence might have been. With no way to distinguish between this sanction and a more tailored one, we cannot find error in the original district court's decision. That the sanction resulted in summary judgment for the defense is the natural consequence of plaintiff's first blunder, losing a potentially crucial piece of evidence, and second stumble, failing to contain the damage through expert testimony. See Marrocco, 966 F.2d at 225 ("Quite simply, sanctions can be employed for a wide array of purposes, but they cannot replace lost evidence.").
 
 
 11
 That this sanction resulted in summary judgment may seem a harsh result. From our review of the record, however, it appears that this case was not triable after the furnace was removed from the Langley-Patterson house some three weeks after the accident. Appellant's theory of the case is that the gas was turned on when the gas company should have known that the furnace was improperly vented. It would seem that the linchpin of this case is how the furnace was hooked up, both at the time of the installation and at the time of the deaths. Once the furnace was dismantled without expert examination or a record made, it is difficult to imagine how negligence could be proved. Production of the furnace might exonerate defendant, if it was shown the furnace was internally defective, but it is hard to see how it would aid appellants in demonstrating the causal link between gas installation and wrongful death. Again, we are reduced to speculation as we have no expert testimony in which to ground our musings. We hasten to add that this line of reasoning is not the approach taken by the district court at summary judgment and that we are not reviewing the court's ultimate decision, but simply placing the sanction in perspective.
 
 
 12
 Lastly, appellant appeals the absence of an evidentiary hearing before the imposition of sanctions. We have explained in the past that Rule 37 requires no evidentiary hearing, and that none would be warranted where the briefs and affidavits fully recount the circumstances surrounding the noncompliance with the court's order. See Margoles v. Johns, 587 F.2d 885, 889 (7th Cir.1978); see also Godlove v. Bamberger, 903 F.2d 1145, 1149 (7th Cir.1990); Loctite Corporation v. Fel-Pro, Inc., 667 F.2d 577, 583 n. 6 (7th Cir.1981). Accordingly, the district court was free to impose sanctions without a hearing, and, in light of the time elapsed and abundant opportunity for affidavits and arguments, was well within its discretion to do so.
 
 
 13
 For the reasons articulated above, we find no error in the district court's treatment of this issue and AFFIRM the imposition of sanctions by the district court, and by extension, AFFIRM the grant of summary judgment.
 
 
 
 [1]
 Accounts in the record differ as to whether the furnace had been installed at the time the Union Electric employee inspected the house in November 1990. The inspector stated that there was no furnace present in the house when he turned on the gas. Nathan Patterson's brother, James Patterson, claims that the furnace was installed at the time and inspected by Union Electric
 
 
 [2]
 In August 1994, the court dismissed the Patterson plaintiff from the case because Imogene Patterson had died. There is some suggestion in the record that this dismissal caused a rift between the two plaintiff parties, as the Patterson family no longer stood to gain from the suit
 
 
 [3]
 Rule 34 reads in pertinent part, "(a) Scope. Any party may serve on any other party a request ... (b) Procedure. The request shall set forth, either by individual item or by category, the items to be inspected and describe each with reasonable particularity. The request shall specify a reasonable time, place, and manner of making the inspection and performing the related acts." Fed.R.Civ.P. 34
 
 
 [4]
 Rule 37(b)(2) reads in pertinent part: "If a party ... fails to obey an order to provide ... discovery ..., the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following: ... (B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting the party from introducing designated matters in evidence." Fed.R.Civ.P. 37(b). We add that "[t]he rules do not state the limits of judicial power ... [j]udges retain authority, long predating the Rules of Civil Procedure." Rose v. Franchetti, 979 F.2d 81, 86 (7th Cir.1992)
 
 
 [5]
 We note that Imogene Patterson died and discontent between the parties ensued in early 1994, months after the furnace was purportedly lost