948 P.2d 575

**William D. GLOVER, Jr., Plaintiff–Appellant,**

v.

**GRACE PACIFIC CORPORATION, H.T. & T. Company, Inc. and Peterbilt Motors Corporation, a Division of PACCAR, Inc., Defendants–Appellees.**

**GRACE PACIFIC CORPORATION, Third–Party Plaintiff–Appellee,**

v.

**H.T. & T. COMPANY, INC. and Peterbilt Motors Corporation, a Division of PACCAR, Inc., Third–Party Defendants–Appellees.**

No. 18317.

Intermediate Court of Appeals of Hawai'i.

Oct. 21, 1997.

---

**156**

Philip D. Bogetto, on the briefs, Honolulu, for plaintiff-appellant.

Dean E. Ochiai, Leslie R. Kop, Brenda Morris Hoernig, Shannon L. Wack, and Elton K. Suzuki, on the brief, Honolulu, for defendant and third-party plaintiff-appellee Grace Pacific Corporation.

Janice T. Futa and George H. Keller (Greeley Walker & Kowen), on the brief, Honolulu, for defendants and third-party defendants-appellees H.T. & T. Company, Inc. and Peterbilt Motors Company.

Before BURNS, C.J., and WATANABE and ACOBA, JJ.

ACOBA, Judge.

We hold in this appeal by Plaintiff–Appellant William D. Glover, Jr. (Glover) that while an order may condition Hawai'i Rules of Civil Procedure (HRCP) Rule 37(b) sanctions on the offending party's failure to satisfy a condition contained in the order, the order in the instant case was not enforceable because the condition that Glover "reschedule" an independent medical examination (IME) with a physician retained by Defendant and Third–Party Plaintiff-Appellee Grace Pacific Corporation (Grace) was imposed after the time set for satisfying the condition had already expired.

We also hold that while the failure to comply with discovery obligations under HRCP Rule 34 may be enforced by resorting to sanctions available under HRCP Rule 37(b), sanctions for failure to complete discovery by the discovery cutoff date are also available under Rules of the Circuit Courts of the State of Hawai'i (RCCH) Rule 12(t). In that regard, we hold that an expert witness must arrive at his or her final opinions by the discovery cutoff date. We conclude that in this case the court's preclusion of certain evidence pertaining to Glover's economic losses and the striking of his expert economic witness were permissible under RCCH Rule 12(t).

I.

On March 15, 1991, Glover filed a complaint against Grace alleging he sustained

injuries in an accident occurring on May 7, 1990. Glover claimed that while driving behind Grace's company truck on the H–1 freeway in Honolulu, Hawai'i, he sustained injuries when parts of the truck fell off and struck Glover's vehicle.

For disposition of this case we examine Glover's appeal from the October 8, 1993 order of the first circuit court (the court) granting the Motion For Sanction[s] To Preclude Evidence Of [Glover's] Physical Injury and Damages (motion to preclude evidence of physical injury and damages) filed by Third–Party Defendant–Appellee H.T. & T. Company, Inc. (HT & T), the distributor/retailer of the truck sold to Grace. In connection with this order, Glover also appeals from the May 25, 1994 amended order granting summary judgment to Grace and HT & T, and the June 22, 1994 amended order granting summary judgment to Third–Party Defendant–Appellee Peterbilt Motors Corporation (Peterbilt), the manufacturer of the truck, both premised on the order granting the motion to preclude evidence of physical injury and damages.

Because we vacate the May 25, 1994 and June 22, 1994 orders granting summary judgment to Grace, HT & T and Peterbilt and remand the case, we also review Glover's appeal from the court's October 4, 1993 order precluding certain evidence pertaining to his claim for economic loss and striking Glover's expert economic loss witness (economic loss order).

## II.

### A.

Trial in this case was set for September 20, 1993. Pursuant to RCCH Rule 12(r) discovery was to be completed within thirty days of the trial date. Thus the discovery cutoff date was August 20, 1993.[1] The following events apparently led to the court's order granting the motion to preclude evidence of physical injury and damages.

On July 13, 1993, counsel for Grace sent a facsimile to Glover's counsel confirming that

an IME had been scheduled on August 10, 1993 with Dr. Calvin Kam (Dr. Kam). Glover subsequently contacted Dr. Kam's office to reschedule the IME to August 13, 1993.

At the IME, Dr. Kam began by asking Glover preliminary questions about his injuries, previous treatment received, and current symptoms. At that point, Glover felt that Dr. Kam had mischaracterized his responses to the doctor's questions. Additionally, Glover believed that Dr. Kam harbored a hostile attitude toward Glover's own physician and Glover's prior medical treatment. For those reasons, Glover terminated the IME stating that he wished his attorney to be present for any further questioning or physical examination. Grace did not file a motion to compel Glover to complete the IME.

### B.

On August 23, 1993, HT & T filed the motion to preclude evidence of [Glover's] physical injury and damages pursuant to HRCP Rule 37(b) because of Glover's "refusal to submit to an [IME]." This motion was joined by Grace on August 30, 1993.

In response to the motion, Glover's counsel, Philip D. Bogetto (Bogetto), filed an affidavit stating that the reason Glover had not scheduled a future IME appointment was because Grace's counsel, Dean Ochiai (Ochiai), had notified Bogetto that Ochiai would reschedule the IME. Bogetto's affidavit states, in relevant part:

8. Thereafter, I received a telephone call from [Ochiai], who upon returning from his vacation on Monday, August 16, 1993, contacted me concerning the further examination.

9. At that time, I requested [Ochiai] to reschedule the [IME] with Dr. Kam's office and I would be present during the examination. *This arrangement was agreeable to [Ochiai] and he was to contact Dr. Kam.* I have not heard from [Ochiai] or his office since that date for a

---

1. Defendant and Third–Party Plaintiff–Appellee Grace Pacific Corporation (Grace) contends that because of an intervening holiday, the discovery cutoff date was August 23, 1993. The three-day difference is not material to the facts of this case.

rescheduled appointment for [Glover] to see Dr. Kam.

(Emphasis added.)

Ochiai did not submit an affidavit rebutting Bogetto's statements. During argument on the motion on September 14, 1993, Bogetto further asserted that:

> [Ochiai] said, "Well, it may be difficult to try to reschedule it, but I'll see what I can do." And I never heard back from him again.

In opposition, HT & T, joined by Grace, contended that Glover was responsible for scheduling the makeup appointment. Janice T. Futa (Futa), counsel for HT & T, stated in her affidavit, "I have made a good faith effort to contact [Glover's] counsel and arrange for an [IME] of [Glover]." During the hearing, however, Bogetto challenged that statement as being false:

> [Bogetto]: [Futa] never requested an [IME] of [Glover]. She never directly or indirectly talked to me about it, never requested it, never asked any information about it. So my first objection was, I don't think she has any standing [sic] to raise any objection over the fact that the [IME] was to be continued by agreement between me and [Ochiai]....

> [Ochiai]: Excuse me. I have to object. That's a misstatement. We continued it to one specific date, but it's not like I continued it beyond discovery [cutoff]. That's a misstatement.

....

[Futa]: *[Bogetto] might be quite correct in that I did not contact him directly to arrange an [IME]. However, I was working with [Ochiai] in doing so* and when I put in any affidavit that we made a good-faith effort to have an [IME] done, that's what I mean. I did work with Dr. Kam's office as far as the [IME] was concerned and [Ochiai] worked with [Bogetto].

(Emphasis added.)

The court issued a "minute order" on September 14, 1993, granting HT & T's and Grace's motion.[2] The minute order stated, in relevant part, "Court [granted HT & T's motion] precluding [Glover] from introducing evidence of [his] physical injury and damages unless [his IME] can be rescheduled and [Glover] pays for Dr. Kam's fees." The minute order did not specify a deadline for completion of the examination.

The court file also contains a letter dated September 20, 1993 from Futa to the court submitting a proposed "Order Granting [HT & T's] Motion for Sanction[s] to Preclude Evidence of [Glover's] Physical Injury and Damages." The letter represents that the proposed order was submitted to Bogetto for signature on Friday, September 17, 1993. Thus, pursuant to RCCH Rule 23, Bogetto had five days from September 17, 1993 within which to notify opposing counsel and the court of his objections to the order.[3]

On September 20, 1993, Glover filed his objections to the proposed order granting HT & T's motion to preclude evidence of physical injury and damages. In apparent

---

**2.** Of course, the court could have determined that the IME should immediately proceed without sanctions. We have noted that Grace had failed to seek any order compelling completion of the IME. Rather, the matter was left dormant, seemingly lending credence to the contention by Philip D. Bogetto (Bogetto), counsel for Plaintiff–Appellant William D. Glover, Jr. (Glover), that there had been an informal agreement with Grace's counsel, Dean Ochiai (Ochiai), to complete the IME.

**3.** Rules of the Circuit Courts of the State of Hawai'i Rule 23 in effect at the time, provided as follows:

> **Rule 23. SETTLEMENT OF JUDG-MENTS, DECREES, AND ORDERS.**
> Within 10 days after decision of the court awarding any ... order which requires settle-ment and approval by the judge, ... the prevailing party, unless otherwise ordered by the court, shall prepare a[n] ... order in accordance with the decision and secure the approval as to form of opposing counsel thereon and deliver the original and one copy to the court, or, if not so approved, serve a copy thereof upon each party who has appeared in the action and deliver the original and one copy to the court. *If any party objects to a proposed ... order, he shall within 5 days thereafter serve upon the prevailing party and deliver to the court a statement of his objections and the reasons therefor,* or his proposed ... order, and in such event, the court shall proceed to settle the ... order.

(Emphasis added.)

reference to the proposed order, Glover's counsel asserted that "[t]here was no requirement in this Court's [minute order] that [Glover] was required to reschedule the [IME], nor, was there any requirement that the [IME] be rescheduled by September 20, 1993."

The record is silent as to how the court determined that the conditions that Glover himself reschedule the IME and that the IME be rescheduled by September 20, 1993 should become part of the court's written ruling. Nevertheless, the court's formal, written order in this matter, filed October 8, 1993, incorporated these conditions. It states, in relevant part:

> IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:
>
> [HT & T's] Motion for Sanction[s] to Preclude Evidence of [Glover's] Physical Injury and Damages filed on August 23, 1993, is GRANTED *with the exception that such evidence would [sic] be allowed if [Glover] is able to re-schedule*[4] *an IME at [Glover's] expense with Dr. Kam by September 20, 1993.*

(Emphasis and footnote added.)

As may be garnered from the terms of the order, the time for completing the IME had passed by the date of the order.

HT & T and Peterbilt apparently filed a motion for summary judgment on September 17, 1993, in which Grace joined, contending that Glover had failed to comply with the court's September 14, 1993 minute order and the unsigned proposed order to which Glover had objected.

Hearing on the summary judgment motion was set for September 20, 1993, the date by which Glover was to have "rescheduled" his IME under the terms of the proposed order, although the proposed order had yet to be adopted and filed. As previously indicated the order was not filed until October 8, 1993. On the hearing date the court granted the motions for summary judgment as to HT & T and Grace and later in the day as to Peterbilt.[5]

### III.

#### A.

■ Glover contends that the court erred in granting HT & T's motion to preclude evidence of physical injury and damages because a motion for an IME was not filed pursuant to HRCP Rule 35.[6] HRCP Rule 35 states, in relevant part, as follows:

> (a) **Order for Examination.** When the mental or physical condition (including the blood group) of a party ... *is in controversy,* the court in which the action is pending may order the party to submit to a physical or mental examination by a physician or to produce for examination the person in his custody or legal control. The order may be made only on motion for

---

**4.** On its face the term "reschedule" is ambiguous as to whether the court required the independent medical examination (IME) to be completed by September 20, or only that an appointment be scheduled by September 20, 1993.

**5.** On the morning of September 20, 1993, the court heard arguments on Third–Party Defendant–Appellee H.T. & T. Company, Inc.'s (HT & T) and Third–Party Defendant–Appellee Peterbilt Motors Corporation's (Peterbilt) motion for summary judgment which Grace had joined. The court granted summary judgment as to Grace and HT & T. The court did not grant summary judgment in favor of Peterbilt at that time. The court found that Peterbilt was not a party because it had not been served by Glover at the time the motion for summary judgment was filed on September 17, 1993.

At the September 20, 1993 hearing, Peterbilt informed the court that it had waived service of

Glover's first amended complaint and had filed answers thereto earlier in the morning. The court informed Peterbilt that it would have to refile its motion for summary judgment.

That same morning, Peterbilt refiled its motion for summary judgment and the motion was scheduled to be heard that afternoon. Grace filed a statement of no position and Glover filed a memorandum in opposition arguing that he needed additional time to conduct discovery. The court granted Peterbilt's motion for summary judgment that afternoon after finding that Glover had sufficient time for discovery.

**6.** Hawai'i Rules of Civil Procedure (HRCP) Rule 35 is almost identical to Federal Rules of Civil Procedure (FRCP) Rule 35. Because the HRCP are patterned after the FRCP, interpretation of the FRCP is highly persuasive with respect to the HRCP. *Ellis v. Crockett,* 51 Haw. 45, 60–1, 451 P.2d 814, 824, *reh'g. denied,* 51 Haw. 86, 451 P.2d 814 (1969).

*good cause shown* and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons whom it is to be made.

(Emphases added.)

■ For an order to issue pursuant to HRCP Rule 35, the motion requesting a physical examination must "adequately demonstrate the existence of the Rule's requirements of 'in controversy' and 'good cause'." *See Schlagenhauf v. Holder*, 379 U.S. 104, 118–19, 85 S.Ct. 234, 242–43, 13 L.Ed.2d 152 (1964). "[T]he movant must produce sufficient information, by whatever means, so that the [trial] judge can fulfill his [or her] function [as] mandated by the Rule." *Id.*

■ The pleadings alone may satisfy these requirements. "A plaintiff in a negligence action who asserts mental or physical injury, places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury." *Id.* In this case, there is no doubt that Glover's physical injuries and damages were "in controversy" and had Grace and HT & T moved for an IME, we believe it would have been granted because Glover's claim of physical injuries provided "good cause" for an IME order.

■ Where however, the plaintiff voluntarily consents to be examined by a physician selected by the defendant, the plaintiff waives his or her right to require that a motion for an examination order be filed under HRCP Rule 35(a). *See Kelleher v. Cohoes Trucking Co.*, 25 F.Supp. 965, 966 (S.D.N.Y.1938); *cf. Hardy v. Riser*, 309 F.Supp. 1234, 1236 (N.D.Miss.1970) (holding that if a plaintiff agrees to an examination "only because he knew the court would likely order it if he did not agree, it is as if an order for physical examination, under [FRCP Rule 35] had been entered").

■ Here, we may conclude that Glover agreed to meet with the doctor selected by Grace and HT & T. Glover exhibited his willingness to submit to the IME when he rescheduled his original appointment with Dr. Kam from August 10, 1993 to August 13, 1993, and subsequently appeared at Dr. Kam's office on that date. Although Glover terminated the IME before the physical examination commenced, his agreement to voluntarily submit to the IME was evidenced by his September 10, 1993 affidavit in opposition to HT & T's motion to preclude evidence of physical injury and damages. In the affidavit, Glover stated that he and Dr. Kam agreed that Glover's counsel should be present during the examination and that "[they] agreed to reschedule the examination so [Glover's] counsel could be present." We conclude, then, that Glover waived his right to require a motion for examination under HRCP Rule 35(a).

B.

Glover additionally argues that no court-approved stipulation for an IME was filed. Although HRCP Rule 35(a) states that an order for a physical or mental examination may be made by motion, the usual practice is to obtain the agreement of the party who will be examined. *Liechty v. Terrill Trucking Co.*, 53 F.R.D. 590, 591 (E.D.Tenn.1971) (citing *Hardy v. Riser*, 309 F.Supp. 1234, 1236, n. 3 (N.D.Miss.1970)). "This is customarily accomplished by the stipulation of counsel for the parties, with FRCP Rule 35(a) ... standing as a compulsory sanction that aids such stipulations." *Id.* (citation omitted). As indicated above, the record indicates that an agreement was reached among the parties for Glover to undergo an IME. Although a formal stipulation was not filed, it is evident from Glover's actions that Glover and the other parties concurred in an IME by Dr. Kam.

C.

■ Glover further asserts that the agreement to conduct the IME should have first been reduced to an order if sanctions under HRCP Rule 37(b)(2)(B) were to apply. HRCP Rule 37 states, in relevant part:

**FAILURE TO MAKE DISCOVERY: SANCTIONS**

**(a) Motion for Order Compelling Discovery.** A party, upon reasonable notice

to other parties and all persons affected thereby, may apply for an order compelling discovery. . . .

. . . .

**(b) Failure to Comply With Order.**

. . . .

*(2) Sanctions By Court In Which Action Is Pending.* If a party . . . *fails to obey an order* to provide or permit discovery, including an order made *under* subdivision (a) of this rule or *Rule 35*, the court in which the action is pending may make such orders in regard to the failure as are just, and among the following:

. . . .

(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or *prohibiting him from introducing designated matters in evidence*[.]

(Emphases added.) [7]

■ Generally, HRCP Rule 37(b) sanctions are only applicable when a prior court order for discovery has been violated. *Azer v. The Courthouse Racquetball Corp.,* 9 Haw. App. 530, 542, 852 P.2d 75, 82–83 (1993). In this case, there was no prior order compelling Glover to submit to an IME under threat of a HRCP Rule 37(b) sanction. However, we believe the conditional nature of the October 8, 1993 order could have satisfied the HRCP Rule 37(b)(2) "order" prerequisite for the imposition of sanctions under HRCP Rule 37(b)(2)(B).

*Langley by Langley v. Union Elec. Co.,* 107 F.3d 510 (7th Cir.1997) is instructive. There the court upheld the preclusion of evidence as a discovery sanction because of plaintiffs' failure to comply with the court's FRCP Rule 37 conditional order.

In *Langley,* both parties in a negligence action reached an agreement under which plaintiffs were to provide defense counsel with the subject furnace for inspection on a

specific date. *Id.* at 513. On the day before the inspection was to take place, plaintiffs' counsel informed defense counsel that inspection would be impossible. *Id.* Although the defendant made an additional request for inspection, no inspection took place, nor was there any explanation as to why the furnace was unavailable. *Id.* Consequently, defendant moved for FRCP Rule 37 sanctions and asked the court to compel plaintiffs to produce the furnace. *Id.* The court issued an order requiring plaintiffs to "produce the furnace in 21 days or, in the alternative, [be] barr[ed] [from] the introduction of any evidence regarding the furnace." *Id.* Plaintiffs were unable to produce the furnace and the court, therefore, barred all evidence concerning the furnace. *Id.* As a result the plaintiffs lacked evidence to establish negligence and defendants moved for and obtained summary judgment. *Id.*

On appeal in that case, plaintiffs argued that there was no prior court order compelling production under FRCP Rule 37(a). The appellate court stated, however, that when plaintiffs failed to produce the furnace within twenty-one days, "the sanction was a perfectly legitimate exercise of [judicial] power under Rule 37(b)." *Id.* at 514.

The instant case is similar. Here, Glover agreed to comply with Grace's and HT & T's request that he submit to an IME. When Glover failed to complete the IME prior to the discovery deadline, Grace and HT & T's motions for sanctions under HRCP Rule 37(b)(2)(B) resulted in the court's conditional order.

The condition allowing Glover to complete the IME was the equivalent of an order to compel referred to in HRCP Rule 37(a). As such, Glover was on notice that should he fail to complete the IME by the designated date,[8] sanctions under HRCP Rule 37(b)(2)(B) would be imposed.

7. Of course, HRCP Rule 37(b) provides for less severe sanctions. HRCP Rule 37(b)(2)(E) states, in part, that
 [i]n lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by

the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

8. We note, however, the ambiguity of the term "reschedule" in the order. *See supra* note 2.

## IV.

■ While we believe the October 8, 1993 conditional order could have satisfied the HRCP Rule 37(b)(2) "order" prerequisite for the imposition of sanctions under HRCP Rule 37(b)(2)(B), the order was not capable of being complied with since it was issued after the date on which Glover was to "reschedule" his IME.

■ "A trial court's imposition of a discovery abuse sanction is reviewable on appeal for abuse of discretion. A trial court abuses its discretion whenever it exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party." *Aloha Unlimited, Inc. v. Coughlin,* 79 Hawai'i 527, 532–33, 904 P.2d 541, 546–47 (App.1995) (quoting *Azer,* 9 Haw.App. at 539, 852 P.2d at 81).

Grace apparently delayed obtaining Glover's IME until ten days before the discovery cutoff date. When the IME was not completed, Grace failed to immediately seek an order compelling completion of the IME. HT & T filed its motion for preclusive sanctions on the purported discovery cutoff date itself. Hearing on HT & T's motion was not scheduled until September 14, 1993, six days before the September 20, 1993 trial date.

The court issued its minute order on September 14, 1993. HT & T apparently presented a proposed form of the order to Bogetto on Friday, September 17, 1993. Pursuant to RCCH Rule 23, Bogetto had five days to file his objections to the proposed order. Bogetto filed his objections on September 20, 1993, the first business day after he was served with the proposed order and well within the time permitted by RCCH Rule 23. Nothing in the record indicates the order was settled on September 20, 1993. Rather, the record reflects that the order requiring Glover to complete his IME by September 20 was not filed until October 8, 1993.

■ The court's minute order of September 14, 1993 was not the "requisite written" order which could be enforced. *Cf. State v. English,* 68 Haw. 46, 52, 705 P.2d 12, 16 (1985) (noting that the court's decision to dismiss the indictment as reflected in the minutes was not a substitute for the required written order of dismissal). Yet the court proceeded to grant summary judgments to Defendants on September 20, 1993, premised on Glover's failure to comply with an order that apparently had yet to be settled and issued.

Additionally, with respect to the condition in the order that Glover himself schedule the IME, we find it difficult to conceive of how Glover could independently accomplish this without the cooperation of or coordination by Grace, since Dr. Kam was Grace's retained physician.

In light of the facts recounted, we conclude that the court did abuse its discretion by imposing the ordered sanction and thereafter granting summary judgments on the basis that Glover would be prevented from establishing his personal injuries and damages therefrom.

## V.

Because we remand the case, we also examine Glover's argument that the court erred in issuing an order (1) precluding Glover's use of evidence of economic losses which was not produced by the August 20, 1993 discovery cutoff date and (2) striking Jack P. Suyderhoud (Suyderhoud) as Glover's expert witness.

Grace moved for such an order on August 25, 1993, citing, among other rules, HRCP Rule 37(b). On August 30, 1993, HT & T joined in the motion. No prior order, written or oral, was issued compelling such discovery. As we have indicated, to justify sanctions under HRCP Rule 37(b), there generally must be a violation of a prior court order.[9] *Azer,* 9 Haw.App. at 542, 852 P.2d at 81; HRCP Rule 37(b); 8A C. Wright, A. Miller & R. Marcus, *Federal Practice and Procedure: Civil* § 2289, at 669 (2d ed.

---

9. On appeal Grace asserts that Hawai'i Revised Statutes § 603–21.9(6) is also authority for the court's order. Because Grace failed to argue this theory to the trial court, we will not consider it on appeal. *Kernan v. Tanaka,* 75 Haw. 1, 35, 856 P.2d 1207, 1224 (1993), *cert. denied,* 510 U.S. 1119, 114 S.Ct. 1070, 127 L.Ed.2d 389 (1994).

1994) ("Rule 37(b) usually has no application if there has not been a court order."); *Daval Steel Products v. M/V Fakredine,* 951 F.2d 1357, 1364–65 (2d Cir.1991).

 Hence, Glover maintains that "if [Grace] was not satisfied with the [discovery] responses ... it was *required* as stated in [HRCP] Rule 34(b) to file for an order under [HRCP] Rule 37(a)" and that Grace failed to do so. HRCP Rule 34(b) requires, in part, that the party upon whom a request for production of documents and things is served "*shall* serve a written response within 30 days after the service of the request." As Glover points out, HRCP Rule 34 allows the requesting party to "move for an order under [HRCP] Rule 37(a) with respect to any objection to or other failure to respond." *Id.* Contrary to Glover's contention, however, HRCP Rule 37 is not necessarily the exclusive means by which a party may seek to enforce HRCP Rule 34 obligations. HRCP Rule 34 provides that a party "may" move for HRCP Rule 37 sanctions, hence indicating that a party is afforded the option of resorting to HRCP Rule 37, but is not limited to proceeding under that rule.

 While Grace did move under HRCP Rule 37(b), it also referred to "[RCCH] Rule 12(r) [which] provides for a discovery [cutoff] 30 days prior to trial ..." in its memorandum in support of its motion. The court, in its order granting the motion, also premised its sanction on the August 20, 1993 discovery cutoff date. Under these circumstances we believe RCCH Rule 12(r) provided sufficient authority for the court to impose appropriate sanctions for the failure to complete discovery obligations before the discovery cutoff date.

 On appeal, Defendants rely on RCCH Rule 12(r). As they note, RCCH Rule 12(r) provides that "[d]iscovery *shall* be cut off 30 days before the assigned trial date." Hence, under RCCH Rule 12(r) the parties share a dual obligation to complete discovery thirty days before the trial date. Glover, accordingly, was required by RCCH Rule 12 to complete his discovery obligations thirty days prior to trial. RCCH Rule 12(t) [10] provides that appropriate sanctions for a violation of any section of RCCH Rule 12 may be imposed in accordance with RCCH Rule 12.1(a)(6) [11] unless good cause is shown.

## A.

 The court's economic loss order excluded as evidence all documents relating to economic damages requested by Grace on November 6, 1992 but not produced before the August 20, 1993 discovery cutoff date by Glover. Grace asserted that Glover failed to disclose documents apparently in Glover's counsel's possession which had been discovered by Grace through collateral sources. [12]

Based on the record, we cannot conclude the court abused its discretion in determining

---

10. Rules of the Circuit Courts of the State of Hawai'i (RCCH) Rule 12(t) provides:

**Sanctions.** Failure of a party or his attorney to comply with any section of this rule is deemed an undue interference with the orderly procedure and unless good cause is shown, the court may, in its discretion, impose sanctions in accord with Rule 12.1(a)(6) of these rules.

11. RCCH Rule 12.1(a)(6) provides, in pertinent part:

As sanctions, the court may, in its discretion:

(i) Dismiss the action *on its own motion, or on the motion of any party* or hold a party in default, as the case may be;

(ii) Order a party to pay the opposing party's reasonable expenses and attorneys' fees;

(iii) Order a change in the calendar status of the action;

(iv) *Impose any other sanction as may be appropriate.*

(Emphases added.)

12. Grace asserted that the following documents were received by Grace from collateral sources: (1) a letter from Bateman Construction to Bogetto indicating dates and hours worked by Glover; (2) a report by O. Gary Whitney dated August 10, 1993 and sent to Bogetto; (3) the face page of the Master Agreement for [Hawai'i] between Operating Engineers Local Union No. 3 and General Contractors Labor Association and the Labor Association of the Building Industry of [Hawai'i], Amendment to Agreement dated September 2, 1980; (4) letter from Bogetto to Jack P. Suyderhoud indicating that Bogetto had in his possession a letter dated May 8, 1992 from the Pension Trust Fund for Operating Engineers; and (5) the face page of the Master Agreement Covering Operating Engineers in the State of [Hawai'i] dated September 11, 1985.

that Glover failed to meet his obligation to produce relevant documents.

The court had available to it the arsenal of sanctions provided by RCCH Rule 12.1(a)(6). Rather than bar all evidence of economic loss, the economic loss order permits Glover to use evidence which had been produced by him in discovery and documents Glover could "prove were provided by him or his attorney" to the defense prior to the discovery cutoff date. This sanction was not comparable to a dismissal of Glover's suit. Under the circumstances, the court's choice of sanctions under RCCH Rule 12 was not an abuse of its discretion.

### B.

■ The court also struck Glover's economic loss expert witness, Suyderhoud, from the witness list. Suyderhoud ostensibly began preliminary investigations over a year before the discovery cutoff date and had not arrived at his final opinions before that date. There is no reason expressed in the record or in the briefs explaining Suyderhoud's failure to do so.

On August 16, 1993, HT & T filed a subpoena duces tecum requiring Suyderhoud to bring the following items in response to a deposition on written interrogatories:

[Suyderhoud's] complete file in connection with the investigation and/or evaluation of the issues involved in this lawsuit, including but not limited to:

(a) All documents provided to [Suyderhoud] or his or her agents by anyone;

(b) All documents obtained or created from [Suyderhoud's] agents;

(c) All documents reviewed by [Suyderhoud], or documents which *s/he reasonably expects to refer to and/or rely upon in arriving at his/her opinions concerning the issues in this lawsuit* including but not limited to all publications, codes, standards, studies, reports, summaries, lists, government documents or other literature; and

(d) All models, raw data, photographs, videotapes, diskettes, exemplars, samples, materials, drawings, drafts, graphs and any other item which [Suyderhoud] re-

ceived, reviewed, and/or intends to and/or contemplates using to support his/her testimony at trial.

(Emphasis added.)

On August 24, 1993, Suyderhoud produced documents pursuant to subpoena. However, these documents did not contain his final opinions.

At his deposition on August 31, 1993, Suyderhoud indicated that he had not yet reached his final opinions on economic losses. He had made only initial calculations. In this context, we believe that the fair import of the policies underlying the discovery cutoff date is that an expert should have arrived at his or her final opinions by that date. Otherwise, the party seeking discovery of such opinions would be prevented from adequately preparing for trial. As a result, the court could determine that Suyderhoud's failure to furnish his final opinion before the discovery cutoff date constituted Glover's undue interference with the orderly pretrial procedures of the court under RCCH Rule 12(t). We conclude, then, that the court acted within its discretion when it entered the economic loss order striking Suyderhoud as a witness.

### VI.

For the foregoing reasons the May 25, 1994 and June 22, 1994 orders granting summary judgment to Grace, HT & T, and Peterbilt are vacated, the October 4, 1993 economic loss order is affirmed, and the case is remanded for disposition consistent with our opinion. On remand, the court is instructed to set a specific date by which the IME of Glover shall be completed and to order that Grace confirm that date with its chosen physician. Except for these changes, the terms of the court's October 8, 1993 order shall remain in effect.