**Electronically Filed
Intermediate Court of Appeals
CAAP-20-0000777
31-OCT-2024
08:29 AM
Dkt. 164 SO**

NO. CAAP-20-0000777

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

KANEKAPOLEI SYDNEY FERNANDEZ FASI, Plaintiff-Appellee, v.
DAVID FRANCIS FASI, Defendant-Appellant

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-D NO. 17-1-6358)

<u>SUMMARY DISPOSITION ORDER</u>
(By: Hiraoka, Presiding Judge, and Wadsworth and Nakasone, JJ.)

This appeal arises out of divorce proceedings between Defendant-Appellant David Francis Fasi (**Husband**) and Plaintiff-Appellee Kanekapolei Sydney Fernandez Fasi (**Wife**).  Husband appeals from the "Decree Granting Divorce and Awarding Child Custody" (**Divorce Decree**), entered on December 2, 2020, by the Family Court of the First Circuit (**Family Court**).[1]  Husband also challenges parts of the Family Court's:  (1) May 29 2020 "Order Re: Evidentiary Hearing" (**Evidentiary Hearing Order**); (2) December 2, 2020 "Order Granting in Part and Denying in Part [Husband's] Motion for Reconsideration, Filed July 20, 2020" and (3) March 3, 2021 "Findings of Fact and Conclusions of Law" (**FOFs/COLs or 3/3/21 FOFs/COLs**).[2]

---

[1]    The Honorable Gale L.F. Ching presided.

[2]    In his notice of appeal, Husband also purports to appeal from the Family Court's November 1, 2018 "Order Granting [Wife's] Attorney's Fees and Costs Associated with '[Wife's] Motion for an Order Compelling [Husband] to Produce Documents, et. al.,' Filed 10/31/2017."  However, Husband's opening

Husband raises two points of error on appeal. First, he contends that the Family Court erred by (a) classifying his 12.5% interest in a real estate development company (**CDLLC**) as Category 5 marital partnership property rather than marital separate property, (b) adopting a fair market value (**FMV**) of "$1,272,470"[3] for his 12.5% interest in CDLLC, as of the June 30, 2019 valuation date[4] (**Valuation Date**), and (c) "awarding half of this net market value to Wife in the property division." Second, Husband contends that the Family Court erred by adopting (a) a Category 1 net market value of zero for Wife's one-sixth (16.6%) interest in an LLC (**FPLLC**) at the date of marriage (**DOM**), (b) a zero value for Wife's 16.6% interest in FPLLC as of the Valuation Date, and (c) a zero value for Husband's Category 2 share of the increase in the value of Wife's interest in FPLLC during the marriage.[5]

After reviewing the record on appeal and the relevant legal authorities, and giving due consideration to the issues raised and the arguments advanced by the parties, we resolve Husband's contentions as follows.

**I.**

Husband's first point of error raises three issues. We address each, in turn, below.

---

brief states no point of error and presents no argument concerning the November 1, 2018 order. Any argument regarding that order is thus deemed waived. See Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 28(b)(4), (7).

[3] The Family Court found the value of Husband's interest in CDLLC to be $1,271,470, not $1,272,470.

[4] In a Stipulation and Order Re: Valuation, filed on September 4, 2019, the parties agreed to use, and the Family Court approved their use of, June 30, 2019, as the date of divorce valuation of the FMV of Husband's CDLLC interest and Wife's FPLLC interest.

[5] In addition, Husband summarily challenges more than two dozen FOFs in the Evidentiary Hearing Order and the 3/3/21 FOFs/COLs, but presents no specific argument as to why any of them is clearly erroneous. "This court is not obliged to address matters for which the appellant[] ha[s] failed to present discernible arguments." Hussey v. Say, 139 Hawaiʻi 181, 191, 384 P.3d 1282, 1292 (2016) (quoting Exotics Hawaiʻi-Kona, Inc. v. E.I. Du Pont De Nemours & Co., 116 Hawaiʻi 277, 288, 172 P.3d 1021, 1032 (2007)) (internal quotation marks omitted); see HRAP Rule 28(b)(7). Nor are we obliged to try to match unidentified quotations of court statements in the opening brief to specific FOFs. We therefore do not address these summary challenges.

2

**A.    The Family Court did not clearly err in determining that Husband's interest in CDLLC was a Category 5 marital asset.**

Husband contends that the Family Court erred in finding that his 12.5% ownership interest in CDLLC, which was provided to him by his brother-in-law, was not a "gift."  He argues that as a gift, his CDLLC interest should have been considered Marital Separate Property.

Under Hawaii's Marital Partnership Model governing the division of property in divorce proceedings, "Marital Separate Property" is defined as, <u>inter</u> <u>alia</u>:

> All property that (1) was acquired by the spouse-owner during the marriage by gift or inheritance, (2) was expressly classified by the donee/heir-spouse-owner as his or her separate property, and (3) after acquisition, was maintained by itself and/or sources other than one or both of the spouses and funded by sources other than marital partnership income or property.

<u>Hamilton v. Hamilton</u>, 138 Hawaiʻi 185, 200, 378 P.3d 901, 917 (2016) (quoting <u>Hussey v. Hussey</u>, 77 Hawaiʻi 202, 206-07, 881 P.2d 1270, 1274-75 (App. 1994), <u>overruled on other grounds by State v. Gonsales</u>, 91 Hawaiʻi 446, 984 P.2d 1272 (App. 1999)).  Marital Separate Property is excluded from the marital partnership and is not subject to division at divorce.  <u>Kakinami v. Kakinami</u>, 127 Hawaiʻi 126, 142, 276 P.3d 695, 711 (2012).

"A 'gift' is generally defined as a voluntary transfer of property by one person to another without any consideration or compensation therefor."  <u>Welton v. Gallagher</u>, 2 Haw. App. 242, 245, 630 P.2d 1077, 1081 (1981).  Here, Husband's asset and debt statements, signed under penalty of perjury and filed before trial, listed the CDLLC asset as having a negative $5000 value, then as having an unknown value with a "Debt Owed Against [It]," consisting of a "$5000 loan."  Husband testified at trial that his interest in CDLLC was a "gift," but he also stated that the $5000 "entry fee" was an "advance" from his brother-in-law, as follows:

> And there's supposed to be a $5,000, you know -- I don't even know what they call it - entry fee or whatever for each of the partners.  But I'm going to advance it, you know. I'm going to pay it. What he said is, I'm going to pay it.

3

And you know what? You guys can pay me back if you make any money.

In FOF 42(a), the Circuit Court determined:

> 42.    [Husband's] Minority Interest in [CDLLC]
>
>    a.    During the marriage, [Husband] purchased a 12.5% minority interest in [CDLLC] for $5,000.00, which was advanced by [Husband's] brother in law . . . .    The Court finds that [Husband's] 12.5% minority interest in [CDLLC] was a Category 5 marital asset, to be divided equally between the parties in this divorce.

Based on our review of the record, we conclude that FOF 42(a), which presents mixed determinations of fact and law, is supported by substantial evidence and is not clearly erroneous.

**B.    The Family Court did not clearly err in determining the value of Husband's 12.5% interest in CDLLC.**

Husband contends that the Family Court erred in finding that Husband's 12.5% interest in CDLLC had a FMV of $1,271,470 on the Valuation Date, based on the opinion of Wife's valuation expert, Gary Kuba.  Husband asserts that "[i]n order to establish the magnitude of Kuba's error," Husband's rebuttal expert, Shelley Tanaka, "using Kuba's own figures, provided an alternative computation of the Husband's interest in Cottonwood at [the date of the conclusion of the evidentiary part of the trial]."  Husband appears to argue that the Family Court erred or otherwise abused its discretion in striking "those figures from Tanaka's report and testimony, claiming she was providing her own appraisal 'through the back door.'"

In an August 2, 2019 "Motion to Set Order (Pretrial Order No. 1)," the Family Court set a November 1, 2019 deadline for the exchange of expert reports.  At a pretrial hearing on December 24, 2019, the Family Court ruled that because no report from Tanaka providing an affirmative valuation of Husband's interest in CDLLC was disclosed by the November 1, 2019 deadline, Tanaka could provide rebuttal opinions, but could not provide an affirmative opinion of the value of Husband's CDLLC interest.  Accordingly, at trial on March 10, 2020, during Tanaka's direct examination, the Family Court allowed Tanaka "to only criticize and critique Mr. Kuba's report[,]" and struck certain statements

4

in Tanaka's report regarding the value of CDLLC.

In these circumstances, the Family Court did not abuse its discretion by limiting Tanaka's testimony to rebuttal opinions and striking her affirmative statement or opinions regarding the value of Husband's CDLLC interest. See Glover v. Grace Pac. Corp., 86 Hawaiʻi 154, 164, 948 P.2d 575, 585 (App. 1997) (ruling that the trial court acted within its discretion when it struck the plaintiff's economic loss expert witness from witness list based on failure to furnish final opinion before discovery cutoff date); Swink v. Cooper, 77 Hawaiʻi 209, 214, 881 P.2d 1277, 1282 (App. 1994) (holding that circuit court did not abuse its discretion in precluding expert witness from testifying about opinion not disclosed in discovery).

We also reject Husband's argument that the Family Court should have credited Tanaka's rebuttal testimony over Kuba's testimony. As factfinder, the Family Court heard all of the admitted evidence, evaluated and weighed each expert's testimony along with the corroborating evidence, and found Kuba's updated opinion that the FMV of Husband's 12.5% interest in CDLLC was $1,271,470 "to be credible." FOFs 42(a) through 42(p). Although the court did not mention Tanaka by name in the FOFs, the court plainly considered her testimony, as reflected in the court's discussion of whether the subject 225 lots "should be valued individually or as part of a bulk sale value[.]"[6] FOF 42(i). The Family Court's determinations of Kuba's credibility and the weight to be given to each expert's testimony were well within its broad discretion and role as factfinder. See Fisher v. Fisher, 111 Hawaiʻi 41, 46, 137 P.3d 355, 360 (2006). The Family Court did not clearly err in finding that Husband's 12.5% interest in CDLLC had an FMV of $1,271,470 on the Valuation Date.[7]

---

[6] Tanaka testified in part that in estimating the value of CDLLC, Kuba should have used "the bulk sale value" instead of "the sum of the retail values" of the 225 lots.

[7] Relatedly, we conclude that FOFs 42(p) and 43 are supported by substantial evidence and are not clearly erroneous.

**C.** **The Family Court did not clearly err in awarding half of the court-determined FMV of Husband's CDLLC interest to wife.**

Husband does not present a separate argument supporting his contention that the Family Court erred by awarding half of the court-determined FMV of Husband's CDLLC interest to Wife in the property division. Because we have concluded that the Family Court did not clearly err in determining that Husband's interest in CDLLC was a Category 5 marital asset, and its FMV on the Valuation Date was $1,271,470, we affirm the court's decision to award half of that value to Wife.

## II.

Husband contends that the Family Court erred in determining that Wife's 16.6% interest in FPPLC had a zero value at DOM and at the Valuation Date, and there was no Category 2 increase in the value of Wife's FPLLC interest during the marriage. These contentions have merit.

**A.** **The Family Court clearly erred in finding that Wife's FPLLC interest had a zero value at DOM.**

The Divorce Decree includes a Property Division Chart attached as Exhibit "B." "Part C: Assets and Debts at [DOM]" lists "Fernandez Partnership (16.67% interest)" — which appears to be the predecessor of FPLLC — with a zero net value at DOM. On December 30, 2020 Husband filed his notice of appeal from the Divorce Decree. Subsequently, the Family Court entered the 3/3/31 FOFs/COLs pursuant to Hawaiʻi Family Court Rules (**HFCR**) Rule 52(a). In FOF 41(e), the Family Court found that Wife's FPLLC interest had a FMV of $175,000 at DOM.

In DL v. CL, 146 Hawaiʻi 328, 463 P.3d 985 (2020), the Hawaiʻi Supreme Court noted that "HFCR Rule 52(a) does not prohibit a family court from entering supplemental findings after a notice of appeal as long as they do not substantively modify pre-appeal findings." Id. at 339 n.8, 463 P.3d at 996 n.8 (emphasis added). Here, changing the FMV of Wife's FPLLC interest from zero to $175,000 at DOM was a substantive modification. In these circumstances, that modification was

6

invalid, and Husband properly challenges the zero FMV stated in the Divorce Decree.

FPLLC's primary assets are a two-acre parcel of unimproved land and a three-acre parcel with two buildings on it located in Kapolei. The unimproved land is leased to three companies that use the land primarily for storage, under short-term leases. The three-acre parcel is primarily leased to two related family companies, with portions subleased to other related family companies.

Wife's business valuation expert Eddy N. Kemp (**Kemp**) used a combined income-based and asset-based approach to find that Wife's 16.6% interest in FPLLC as of December 1997 was $175,000. His approach took into account the 1997 real estate value of FPLLC's land, as well as 1997 rent of $363,000 and net operating income after expenses of $295,000. Although Wife received K-1 tax forms from FPLLC, which required her to pay taxes on phantom income, FPLLC distributed income to its members to cover that tax liability up until tax year 2016, so Wife had no FPLLC tax expense at DOM.

Husband's expert Tanaka determined the primary value of Wife's FPLLC interest was in the land it owned, and found FPLLC's land was valued at $5,420,000 at DOM. Tanaka found Wife's pro rata interest in FPLLC was $500,000 at DOM, then applied a 50% discount for lack of control and lack of marketability to arrive at a $250,000 DOM value.

Based on our review of the record, there was no substantial evidence to support the Family Court's finding that Wife's FPLLC interest had a zero value at DOM. The court clearly erred in stating that value.

**B.    The Family Court clearly erred in finding that Wife's FPLLC interest had a zero value on the Valuation Date and did not increase in value during the marriage.**

Kemp testified that FPLLC's real estate value increased to $9.412 million as of the Valuation Date, and on that date FPLLC had total assets of $10.878 million. In contrast, Tanaka testified that the combined real estate value of the properties

rose from $5,420,000 in 1997 to $13,520,000 as of December 2018.

In determining there was no increase in the value of Wife's FPLLC interest during the period from 1997 to 2019, the Family Court listed the following findings at FOF 41(s)(i) to 41(t) describing the financial difficulties faced by FPLLC:

> i.   [FPLLC] was formed and is operated to manage its real estate assets for the benefit of the other . . . family businesses that occupy its real estate holdings, and not to maximize its real property assets for a profit.
>
> ii.  The . . . family businesses that occupy the real estate holdings of [FPLLC] hold long term leases at below fair market rents;
>
> iii. The . . . largest tenant of [FPLLC] is on a rent abatement, due to financial problems . . . and this factor negatively affects the expected income of [FPLLC].
>
> iv.  Although [FPLLC] owns valuable real estate and cash assets, [Wife], as well as a prospective buyer of [Wife's] 16.6% minority interest has no control or means to get access to any of the company's assets . . . .
>
> v.   The real estate assets owned by [FPLLC] are in need of substantial repair and rehabilitation, due to deferred maintenance of the buildings and grounds, and those repairs are likely to consume most or all of the company's available cash.
>
> vi.  Although [Wife] does not receive any distributions from the company, and distributions to cover tax liabilities have been stopped since 2016, she does receive a K-1 each year for phantom taxable income from the company, and therefore [Wife's] ownership of the company results in an income tax liability each year, with no associated distributions of income.
>
> vii. As both [Wife's] expert, Eddy Kemp, and [Husband's] expert, Shelley Tanaka conceded, a potential investor/purchaser of [Wife's] interest in [FPLLC] would have numerous other profitable real estate investment vehicles to choose from, which unlike [FPLLC] are intended to generate a profit to their investors, and as such, this Court finds that the appraisal evidence and opinions of Category 2 marital appreciation of [Wife's] interest in [FPLLC] presented by the parties . . .

are not credible in view of the above important and significant factors negatively impacting the fair market value and salability of Wife's 16.6% minority interest.

. . . .

t.    The Court did not find the expert business valuation reports presented by the parties to be credible evidence of any Category 2 appreciation of [Wife's] 16.6% minority interest.

The Family Court appears to have disregarded important aspects of Kemp's valuation that fully accounted for these factors.  As to the concerns raised in FOFs 41(s)(i) to (iii), Kemp testified that in making his valuation, he weighted an income-based valuation more heavily than an asset-based valuation, because there were significant concerns negatively affecting income for FPLLC.  He cited the fact that there were issues regarding the primary tenant casting doubt on its ability to operate, and that management was "investigating the sale of the enterprise."  Kemp noted that "[l]onger term it is expected that the two properties owned by the company will either be sold or redeveloped into warehousing or other uses that will generate profits for the owners."

Kemp accounted for the poor prospects regarding rental income by giving a 20% greater weight to an income valuation approach.  Under Kemp's valuation, the asset-based value of Wife's interest at the Valuation Date was $932,141 and assigned a 40% weight, while the income value was $532,000 and assigned a 60% weight, in arriving at a blended value of $692,056 before other discounts.

The concern raised in FOF 41(s)(iv) was also accounted for by Kemp in both his 1997 and 2019 valuations of Wife's interest.  For the 1997 valuation, Kemp applied a 30% lack of control discount, and for the June 30, 2019 valuation, Kemp applied a 35% minority interest (i.e., lack of control) discount.

FOF 41(s)(v), finding that FPLLC's properties were "in need of substantial repair and rehabilitation" was also accounted for in Kemp's valuation as of June 30, 2019.  Kemp increased the company's liabilities by $1.834 million to account for deferred

maintenance projects, based on contractor estimates provided to him by the company.

The Family Court's finding in FOF 41(s)(vi) that since 2016, the company has stopped making distributions to members to cover phantom tax liabilities, does not provide a basis to disregard Kemp's valuation as of June 30, 2019. Wife's mother testified the reason distributions stopped was to accumulate funds for renovations. Kemp found that as of the June 30, 2019 valuation date, renovation costs were estimated at $1.834 million while the company had accumulated $2.738 million in cash. Therefore, there was no longer a reason to stop distributions for K-1 tax liability going forward.

The Family Court's finding in FOF 41(s)(vii), that both Wife's and Husband's experts conceded a potential investor "would have numerous other profitable real estate investment vehicles to choose from," misses the point of their business valuations, which applied substantial discounts to account for the difficulties associated with a sale of Wife's interest. For example, Kemp's engagement letter and related trial testimony specifies he was engaged to estimate the FMV of Wife's FPLLC interest, and defines FMV as "the price at which property would change hands between a willing buyer and a willing seller where neither is under compulsion to act and each is reasonably informed of relevant information." In determining an FMV of $525,000 for Wife's interest as of the Valuation Date, Kemp incorporated all of the factors and concerns raised by the Family Court.

To support its conclusion that the FMV of Wife's FPLLC interest did not increase during the marriage, the Family Court relied on Kemp's statement that "[i]n reality, it's unlikely that this interest could be sold to anyone." This statement contradicted all of Kemp's prior detailed testimony, and was offered without supporting evidence.

The Family Court also disregarded Tanaka's valuation of Wife's FPLLC interest. Before applying discounts for lack of control and marketability, Tanaka found Wife's pro rata interest

10

in FPLLC was $500,000 at DOM and $2,500,000 as of December 31, 2018. She then applied a 50% combined lack of control and marketability discount to the 1997 value of $500,000 to arrive at $250,000 for Wife's interest at DOM. Tanaka applied a combined 47% lack of control and marketability discount to Wife's pro rata interest of $2,500,000 in 2018 to arrive at a value of $1,330,000 for Wife's interest as of December 2018.[8/]

We do not mean to suggest that the Family Court was required to adopt either Kemp's or Tanaka's valuation wholesale. We highlight Kemp's valuation only to show that all or substantially all of the factors relied upon by the Family Court to rationalize a zero value for Wife's FPLLC interest on the Valuation Date were in fact considered by Kemp in his valuation. The Family Court's findings that Wife's FPLLC interest had zero value on the Valuation Date and did not increase in value during the marriage are not supported by substantial evidence. These findings and related conclusions, including FOF 19 in the Evidentiary Hearing Order and FOFs 41(s), 41(t), 41(u), and 41(v) in the 3/3/21 FOFs/COLs, are therefore clearly erroneous.

### III.

For the reasons discussed above, we vacate those portions of the Family Court's May 29, 2020 "Order Re: Evidentiary Hearing," December 2, 2020 "Decree Granting Divorce and Awarding Child Custody" (including the Property Division Chart attached as Exhibit "B"), and March 3, 2021 "Findings of Fact and Conclusions of Law" that found or otherwise concluded that Wife's FPLLC interest had zero value on the June 30, 2019 Valuation Date and did not increase in value from the date of marriage to the Valuation Date. We also vacate those portions of the Divorce Decree (including the Property Division Chart) that reflect an equalization payment that is based in part on the Family Court's finding that Wife's FPLLC interest had zero value

---

[8/] Tanaka's report was written in April 2019. However, she testified that the value of FPLLC would likely be higher as of the date of her testimony on February 24, 2020.

on the Valuation Date and did not increase in value during the marriage. We remand this case to the Family Court for further proceedings consistent with this Summary Disposition Order.

DATED: Honolulu, Hawaiʻi, October 31, 2024.


On the briefs:

Peter Van Name Esser
for Defendant-Appellant.

Steven J. Kim
for Plaintiff-Appellee.

/s/ Keith K. Hiraoka
Presiding Judge

/s/ Clyde J. Wadsworth
Associate Judge


/s/ Karen T. Nakasone
Associate Judge